LESTER J. MARSTON
California State Bar No. 081030
RAPPORT AND MARSTON
405 West Perkins Street
Ukiah, California 95482
Telephone: 707-462-6846
Facsimile: 707-462-4235
Email: marston1@pacbell.net

Attorneys for Plaintiff
the Alturas Indian Rancheria

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| ALTURAS INDIAN RANCHERIA, | Case No. |
|---|---|
| Plaintiff, | |
| v. | **COMPLAINT FOR DECLARATORY AND MONETARY RELIEF** |
| SALLY JEWELL, Secretary of the United States Department of the Interior; KEVIN WASHBURN, Assistant Secretary of Indian Affairs; AMY DUTSCHKE, Pacific Regional Director, Bureau of Indian Affairs; TERE SALKELD, Pacific Regional Office Contracting Officer, Bureau of Indian Affairs, | |
| Defendants. | |

## INTRODUCTION

1. This is an action brought by the Alturas Indian Rancheria ("Tribe"), a federally recognized Indian tribe, under the Indian Self-Determination and Education Assistance Act, 25 U.S.C. § 450, et seq. ("ISDEAA"), the Administrative Procedure Act, 25 U.S.C. § 701, et seq. ("APA"), and the Contract Disputes Act, 41 U.S.C. § 7101 et seq. ("CDA"), against the Secretary of the Interior ("Secretary") and various high ranking officials of the Department of the Interior (collectively "Federal Defendants"), for violations of the ISDEAA, the APA, and the fiduciary trust duties owed to the Tribe by the United States. Specifically, the Federal Defendants: (1) breached its ISDEAA contract ("ISDEAA Contract") with the Tribe by failing to pay to the Tribe the contract support costs provided for in the ISDEAA Contract for the years 2012 and 2013 and (2) denied the Tribe's administrative

1  claim filed with the Bureau of Indian Affairs ("BIA"), pursuant to the CDA, for payment of its contract support costs in violation of the Supreme Court's decision in *Ramah Navajo Chapter v. Salazar*, 567 U.S. ___, 132 S. Ct. 2181 (2013) ("*Ramah*") and this Court's decision in *Alturas Indian Rancheria v. Salazar*, Case No. 2:10-cv-01997 LKK-EFB. The Tribe seeks an order from the Court: (1) declaring that the Federal Defendants acted contrary to the law, in violation of the ISDEAA and the APA, in failing to approve the Tribe's CDA claim and by failing to pay to the Tribe the contract support costs required by the Tribe's ISDEAA Contract; (2) declaring that the Federal Defendants breached their fiduciary obligations owed to the Tribe under the ISDEAA; (3) declaring that Defendants owe the Tribe contract support costs under the ISDEAA and the agreements between the Bureau of Indian Affairs ("BIA") and the Tribe, plus interest, pursuant to 41 U.S.C. § 7109(a)(1); (4) ordering the Federal Defendants to pay the contract support costs due and owing to the Tribe under the Tribe's ISDEAA Contract with the BIA, a sum totaling $584,645, plus interest, pursuant to 41 U.S.C. § 7109(a)(1); and (5) awarding reasonable attorneys' fees, expenses, and costs to the Tribe, pursuant to 5 U.S.C. § 504 and 28 U.S.C. § 2412, on the grounds that Federal Defendants' position is not substantially justified.

**JURISDICTION**

2. This Court's jurisdiction over the Tribe's claims is based upon the following:

(a)  28 U.S.C. § 1331, in that this action arises under the Constitution and laws of the United States;

(b)  28 U.S.C. § 1361, in that the Tribe seeks to compel officers and employees of the United States and its agencies to perform duties owed to the Tribe;

(c)  25 U.S.C. § 450, et seq. (ISDEAA), 25 U.S.C. § 450, et seq., specifically 25 U.S.C. § 450m-1(a), in that the United States District Courts have original jurisdiction over any civil action or claim against the appropriate Secretary arising under the ISDEAA and concurrent jurisdiction with the United States Court of Claims, over any civil action or claim against the Secretary for money damages arising under contracts authorized by the ISDEAA;

(d)  25 C.F.R. § 900.222(e) and 25 C.F.R. § 900.224; and

(e) 28 U.S.C. § 1362, in that the Tribe is a federally recognized Indian tribe that asserts that the Federal Defendants' actions are inconsistent with the Constitution and laws of the United States.

**VENUE**

3. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391, in that the Federal Defendants reside or are subject to suit in the Eastern District of California and the Tribe's claims arose within the Eastern District.

**PARTIES**

4. Plaintiff, the Alturas Indian Rancheria, is a federally recognized Indian tribe, located in Modoc County, California, organized under the provisions of the Indian Reorganization Act, 25 U.S.C. § 476, et seq., under a written Constitution that has been approved by the Secretary of the Interior and which designates the Tribe's Business Committee and General Council as the governing body of the Tribe. See Federal Register Notice published by the Secretary of the Interior at 75 Federal Register 60810, attached hereto as **Exhibit 1**.

5. Defendant, Sally Jewell ("Jewell"), is the Secretary of the United States Department of the Interior ("DOI"). Jewell is sued in her official capacity as the Secretary of the DOI.

6. Defendant, Kevin Washburn ("Washburn"), is the Assistant Secretary of Indian Affairs. Washburn is sued in his official capacity as the Assistant Secretary of Indian Affairs.

7. Defendant, Amy Dutschke ("Dutschke"), is the Pacific Regional Director of the BIA. Dutschke is sued in her official capacity as the Pacific Regional Director of the BIA.

8. Defendant, Tere Salkeld ("Salkeld"), is the Contracting/Awarding Officer, Pacific Regional Office of the BIA. Salkeld is sued in her official capacity as the Contracting/Awarding Officer, Pacific Regional Office, Northern California Agency of the BIA.

9. Defendants are all officers or employees of the DOI who have direct or delegated statutory duties or responsibilities for carrying out the provisions of 25 U.S.C. § 450, et seq. and for fulfilling the trust responsibilities of the United States to the Tribe.

//
//

**GENERAL ALLEGATIONS**

10. The Tribe entered into a self-determination contract for fiscal year 2009 with the BIA, pursuant to the provisions of the ISDEAA. In that contract, the Tribe agreed to provide government operations services that the BIA would have been required to provide to the Tribe under the contract. In return, the BIA agreed to provide both base funding and funding for the contract support costs arising from the contract.

11. In January 2010, in response to an internal tribal dispute regarding who constituted the members of the Tribe and who constituted the members of the Tribe's Business Committee, the BIA, Northern California Agency, refused to renew the Tribe's 2009 self-determination contract. As a result of the actions taken by the BIA, the Tribe was not permitted to enter into self-determination contracts for fiscal years 2010 or 2011.

12. In July 2010, the Tribe filed an action in the United States District Court, Eastern District of California ("Eastern District"), *Alturas Indian Rancheria v. Kenneth L. Salazar, et al.,* Case No. 2:10-cv-01997, seeking, among other forms of relief, an order directing the defendants ("Salazar Defendants") to enter into a self-determination contract for 2010-2012 and to provide the Tribe with the ISDEAA funding to which the Tribe was entitled under the contracts. On January 11, 2012, the Tribe and the Salazar Defendants entered into a stipulation in which the parties settled the Tribe's claims against the Salazar Defendants. Pursuant to that stipulation, this Court entered judgment pursuant to the Stipulation for Entry of Judgment and Order dated January 13, 2012 ("Judgment"). A true and correct copy of the Judgment is hereby incorporated by this reference and attached hereto as **Exhibit 2**.

13. Subsequent to the issuance of the Judgment, the BIA entered into Self-Determination Contract No. A12AV00538 ("Contract") with the Tribe for fiscal years 2012-2014. A true and correct copy of the Contract is hereby incorporated by this reference and attached hereto as **Exhibit 3**. The Contract included in the 2012 funding the grant funding for 2010 and 2011, as well as the funding for 2012. Pursuant to the Judgment, the BIA paid to the Tribe the base funding that the federal government was obligated to pay to the Tribe for fiscal years 2010-2012. The BIA, however, did not pay contract support costs for those contract years.

14. Shortly after the Court issued the Judgment, the Tribe and the Salazar Defendants began negotiating the cost rate for indirect contract support costs for the fiscal years 2012 and 2013 ISDEAA Contract. The negotiated rate for 2012 applied to the grant funding for 2010-2012. Those negotiations were completed on June 25, 2013, when the parties executed the Indian Organizations Indirect Cost Negotiation Agreement ("Negotiated Rate Agreement"). A true and correct copy of the Negotiated Rate Agreement is hereby incorporated by this reference and attached hereto as **Exhibit 4**. The Negotiated Rate Agreement states that the Tribe is to be paid $410,720 in indirect contract support costs for the fiscal year 2012 Contract and $351,920 for the fiscal year 2013 Contract.

15. Nevertheless, the BIA failed to pay the Tribe the contract support costs set forth in the Negotiated Rate Agreement. In response, on September 27, 2013, the Tribe filed a motion with the Court seeking an order to enforce the Judgment and find the Salazar Defendants in contempt of the Judgment for failing to pay the Tribe its full indirect contract support costs pursuant to the Judgment. In a November 25, 2013, Order, the Eastern District, however, dismissed the Tribe's motion. A true and correct copy of the Eastern District's November 25, 2013, Order is hereby incorporated by this reference and is attached hereto as **Exhibit 5**. After noting that "[i]t is true that by operation of law, the government is obligated to pay contract support costs related to each of the self-determination contracts," this Court in *Salazar* found that the Salazar Defendants could not be held in contempt because the indirect cost rate and the amounts of indirect costs due were not negotiated until after the Court's Judgment had been issued. As such, this Court held that the Salazar Defendants were not in contempt of the Judgment.

16. In denying the Tribe's motion to hold the Salazar Defendants in contempt in *Salazar,* this Court also noted that: "The government has submitted 'Supplemental Briefing'…asserting that plaintiff is a class member in…*Ramah Navajo Chapter v. Lujan*, Civ. No. 1:90-cv-00957-LH-KBM…As a result, the government argues, 'unless the Tribe can show that it has opted out of the *Ramah* class, the Tribe should not be allowed to pursue its claims for contract support costs under the ISDEAA [ISDA] contracts here.'…There are at least two obvious problems with the government's assertion. First, the government has not attached the operative complaint or class certification order in *Ramah* so that this Court could determine whether plaintiff actually is a member of the class. Second,

the *Ramah* litigation was commenced 23 years ago, in 1990, and the class was certified 20 years ago, in 1993…The time for the government to notify the court that plaintiff was barred from pursuing its claims was 13 years ago, when plaintiff filed this lawsuit against the government, not two weeks ago. This lawsuit has now been litigated all the way to a final judgment by settlement, and accordingly, there is no longer a 'claim' to be barred by plaintiff's alleged class membership."

17. Since the Negotiated Rate Agreement was executed on June 25, 2013, the BIA has not paid the Tribe any indirect contract support costs for fiscal year 2012, as required by the Negotiated Rate Agreement.

18. On or about February 14, 2014, the BIA paid the Tribe $177,995 of the contract support costs owed for fiscal year 2013. In doing so, the BIA indicated that there was a balance due on the fiscal year 2013 contract support cost funds of $153,401. This figure, however, is $20,524 short of what the BIA was required to pay to the Tribe under the Negotiated Rate Agreement. The Negotiated Rate Agreement requires that the BIA pay the Tribe $351,920 in indirect contract support costs for fiscal year 2013. If you subtract the $177,995 received by the Tribe on or about February 14, 2014, the BIA still owes the Tribe $173,925 in contract support costs for fiscal year 2013. In sum, the Tribe is owed $410,720 in contract support costs for fiscal year 2012 and $173,925 for fiscal year 2013, resulting in a total balance that the BIA owes the Tribe of $584,645.

19. On February 27, 2014, the Tribe filed a claim ("CDA Claim") with the Tribe's Contracting Officer, Tere Salkeld, pursuant to the provisions of the CDA, 41 U.S.C. § 7101 et seq., and §§ 110 (a) and (d) of the ISDEAA (25 U.S.C. §§ 450m-1(a) and (d)), for all damages arising out of the failure of the BIA to pay the contract support costs due under the Negotiated Rate Agreement and the ISDEAA Contract. A copy of the Tribe's CDA Claim is hereby incorporated by this reference and attached hereto as **Exhibit 6.** The Tribe's CDA Claim complied with the requirements set forth in 41 U.S.C. § 7101 et seq.

20. In its CDA Claim, the Tribe detailed the contract support costs due and owing to the Tribe pursuant to the Negotiated Rate Agreement and specifically requested that the BIA resolve the matter at the agency level to avoid the necessity of District Court litigation. Moreover, in a transmittal letter ("CDA Claim Transmittal Letter") drafted by the Tribe's attorney, Lester J. Marston, which was

submitted to the BIA along with the CDA Claim, the Tribe informed the BIA that the Tribe was not bound by the settlement negotiations in *Ramah* because the class certified in *Ramah* was limited to Indian tribes who had contracted with the Secretary under the ISDEAA prior to 1993, the year the class was certified. A true and correct copy of the CDA Claim Transmittal Letter and the *Ramah* class certification are hereby incorporated by this reference and attached hereto as **Exhibits 7** and **8**, respectively. At the earliest, the Tribe contracted with the Secretary under the ISDEAA in 1998 and is not, therefore, part of the *Ramah* class and is not bound by the settlement negotiations in that dispute.

21. The CDA, 41 U.S.C. § 7103(f)(2), requires that, for a claim of more than $100,000, the contracting officer must, within sixty (60) days of receipt of the submitted certified claim, issue a Contracting Officer's Final Decision or notify the Tribe of the time within which a decision will be issued.

22. The CDA, 41 U.S.C. § 7103(f)(5), also provides that if the contracting officer fails to issue a decision on a claim within the required time period, such failure is deemed to be a decision by the contracting officer denying the claim and authorizes an appeal or action on the claim.

23. The regulations promulgated under the CDA by the BIA, 25 C.F.R. § 900.224, further provide that, if the awarding official does not issue a decision within the time required under Sec. 900.223, the Indian tribe or tribal organization may treat the delay as though the awarding official has denied the claim, and proceed to go directly to the District Court, according to § 900.222 (e) to recover its contract support costs.

24. By April 28, 2014, more than sixty (60) days after the Tribe filed its CDA Claim with the Tribe's contracting officer, the BIA had not issued a Contracting Officer's Final Decision, nor had the BIA notified the Tribe of the time within which a decision would be issued. On April 28, 2014, therefore, the Tribe's CDA Claim was deemed denied by operation of law and the Tribe had the right to seek redress directly in this Court.

25. On May 7, 2014, Lester J. Marston, attorney for the Tribe, placed a telephone call to BIA Attorney Advisor Karen Koch, in the Solicitor's Office, requesting information regarding why the BIA had not responded to the Tribe's CDA Claim and informing Ms. Koch that the claim had been denied by operation of law. Ms. Koch was unaware of the fact that the BIA had not taken action on the claim.

During the phone call, Mr. Marston made an offer to Ms. Koch that if the BIA paid the claim, the Tribe would waive any claims that it had to attorneys' fees. Mr. Marston then told Ms. Koch that if the Tribe was forced to sue the BIA to recover its contract support costs and was successful in the lawsuit, that the Tribe would seek to recover attorneys' fees under the Equal Access to Justice Act, 5 U.S.C. § 504.

26. Subsequent to the May 7, 2014, telephone call with Ms. Koch, the Tribe received a letter on May 19, 2014, from Tere Salkeld, which purported to administratively stay the Tribe's CDA Claim pending possible settlement of the class action litigation in *Ramah*, despite the fact that the Tribe had detailed to the BIA in its CDA Claim Transmittal Letter that the Tribe is not a member of the *Ramah* class and is not bound by the settlement in that action. A true and correct copy of the BIA's letter responding to the Tribe's CDA Claim is hereby incorporated by this reference and attached hereto as **Exhibit 9.** The letter did not address the fact that the Tribe's CDA Claim had already been denied by operation of law.

27. The Tribe, therefore, files this complaint ("Complaint") challenging the BIA's denial of the Tribe's CDA Claim.

**FIRST CAUSE OF ACTION**

(Violation of the ISDEAA, 25 U.S.C. § 450, et seq.)

28. The Tribe realleges each of the allegations set forth in Paragraphs 1 through 27 above, and by this reference incorporates each allegation herein as if set forth in full.

29. Pursuant to 25 U.S.C. § 450 (f), the Secretary is directed to enter into self-determination contracts with willing tribes, pursuant to which those tribes will provide services such as education and law enforcement that otherwise would have been provided by the federal government to the Tribe. 25 U.S.C. § 450 (f). Under the ISDEAA, once an Indian tribe has submitted a proposal for a self-determination contract, or a proposal to amend or renew such a contract, the Secretary shall approve and enter into the contract with the Tribe within ninety (90) days, unless one of the enumerated reasons for refusing to contract exists as set forth in the ISDEAA. 25 U.S.C. § 450f (a)(2).

30. The amount of funds provided to the Tribe under these contracts is to be no less than the amount the Secretary would have spent to run the program, plus contract support costs. 25 U.S.C. § 450j-1(a)(1) & (2) ["There shall be added to the amount required by paragraph (1) contract support

costs which shall consist of an amount for the reasonable costs for activities which must be carried on by a tribal organization as a contractor to ensure compliance with the terms of the contract and prudent management"]; See also *Ramah*, at 2186, ["ISD[E]A[A] mandates that the Secretary shall pay the full amount of 'contract support costs' incurred by tribes in performing their contracts"].

31. The regulations implementing the ISDEAA further require that contract requests "must contain" an identification of "the amount of direct contract support costs," as well as "[a]n identification of funds the Indian tribe or tribal organization requests to recover for indirect contract support costs." 25 C.F.R. § 900.8(h)(2) & (3). As defined by the ISDEAA, contract support costs "shall consist of an amount for the reasonable costs for activities which must be carried on by a tribal organization as a contractor to ensure compliance with the terms of the contract and prudent management, but which . . . (A) normally are not carried on by the respective Secretary in his direct operation of the program; or (B) are provided by the Secretary in support of the contracted program from resources other than those under contract." *Ramah*, at 2186.

32. Additionally, in *Ramah*, the Supreme Court held that the BIA cannot refuse to pay contract support costs simply because the BIA has not allocated adequate funds to pay the support costs of all 638 contract tribes. Because, the Court reasoned, Congress has made sufficient funds *legally* available to the BIA to pay the tribes' contracts, it does not matter that the BIA has allocated some of those funds to serve other purposes, such that the remainder was insufficient to pay tribes in full. *Ramah* at 2189. In other words, as long as Congress has appropriated sufficient legally unrestricted funds to pay the contracts at issue, the government's promise to pay is binding. *Id*.

33. The Tribe entered into an ISDEAA contract with the BIA for fiscal years 2012-2014 and the Tribe and the BIA executed the Negotiated Rate Agreement setting forth the specific amounts of contract support costs that the BIA agreed to provide to the Tribe.

34. Since the Negotiated Rate Agreement was executed on June 25, 2013, the BIA has not paid the Tribe any indirect contract support costs for fiscal year 2012, as required by the Negotiated Rate Agreement. On or about February 14, 2014, the BIA did pay the Tribe $177,995 of the contract support costs owed for fiscal year 2013. In doing so, the BIA indicated that there was a balance due on the fiscal year 2013 contract support cost funds of $153,401. This figure, however, is $20,524 short of

what the BIA was required to pay to the Tribe under the Negotiated Rate Agreement. The Negotiated Rate Agreement requires that the BIA pay the Tribe $351,920 in indirect contract support costs for fiscal year 2013. Less the $177,995 received by the Tribe on or about February 14, 2014, the Tribe is still owed $173,925 for fiscal year 2013. In sum, the Tribe is owed $410,720 in contract support costs for fiscal year 2012 and $173,925 for fiscal year 2013, resulting in a total balance due of $584,645.

35. The Tribe is, consequently, entitled to the payment of contract support costs in full, regardless of whether the BIA has sufficient funds to pay the money owed. Under *Ramah* and as required by the Negotiated Rate Agreement and the ISDEAA, the BIA is required to pay the Tribe its full contract support costs for fiscal years 2012 and 2013, totaling $584,645.

WHEREFORE, the Tribe prays as hereinafter set forth.

## SECOND CAUSE OF ACTION

(Violation of the APA, 5 U.S.C. § 701, et seq.)

36. The Tribe realleges each of the allegations set forth in Paragraphs 1 through 35 above, and by this reference incorporates each allegation herein as if set forth in full.

37. The Federal Defendants' refusal to approve the Tribe's CDA Claim and to pay the Tribe the contract support costs due and owing pursuant to the Negotiated Rate Agreement and as required by the ISDEAA and the Supreme Court's decision in *Ramah* is not in accordance with the law, which is a violation of the APA, 5 U.S.C. § 701, et seq.

38. An actual controversy exists between the Tribe and the Federal Defendants. The Tribe contends that the Federal Defendants' refusal to honor the Negotiated Rate Agreement and pay the Tribe the contract support costs for the fiscal years 2012 and 2013, under the Tribe's ISDEAA Contracts is unlawful, while the Federal Defendants contend that their actions in denying the Tribe's CDA Claim by operation of law is consistent with applicable law.

39. Unless the Federal Defendants are ordered to pay the Tribe the contract support costs due and owing under the Negotiated Rate Agreement and the ISDEAA, the United States government's statutes, regulations, and policies promoting tribal self-government under the ISDEAA, and its trust duties arising thereunder will be frustrated.

WHEREFORE, the Tribe prays as hereinafter set forth.

**THIRD CAUSE OF ACTION**

(Breach of Trust)

40. The Tribe realleges each of the allegations set forth in Paragraphs 1 through 38 above, and by this reference incorporates each allegation herein as if set forth in full.

41. The failure of the Federal Defendants to carry out their duties imposed upon them under the ISDEAA, and the regulations promulgated thereunder, constitutes a breach of the United States' fiduciary trust duties owed to the Tribe by the United States.

42. An actual controversy exists between the Tribe and the Federal Defendants in that the Tribe contends that the Federal Defendants have a fiduciary duty to provide the Tribe with contract support costs pursuant to the ISDEAA Contract and under the ISDEAA and the Negotiated Rate Agreement, while Defendants claim that they owe no such trust duty to the Tribe until the completion of the settlement negotiations in the *Ramah* class action lawsuit, of which the Tribe is not a class member.

43. Unless this Court issues an order directing the Federal Defendants to pay to the Tribe its indirect costs pursuant to the ISDEAA Contract, the Federal Defendants fiduciary obligations owed to the Tribe under the ISDEAA that mandate that the Federal Defendant's pay to the Tribe the indirect support costs required by the ISDEAA Contract and Negotiated Rate Agreement will be breached and the provisions of the ISDEAA will be violated.

**PRAYER FOR RELIEF**

WHEREFORE, the Tribe prays, pursuant to all of its claims, as follows:

1. That the Court declare the Federal Defendants acted contrary to the law, in violation of the ISDEAA and the APA, in failing to approve the Tribe's CDA Claim and by failing to provide the Tribe with contract support costs incident to the Tribe's ISDEAA Contract, as set forth in the Negotiated Rate Agreement.

2. That the Court declares the Federal Defendants breached their fiduciary obligations to the Tribe imposed upon the Federal Defendants by the ISDEAA.

3. That the Court declare the Federal Defendants owe the Tribe contract support costs under the ISDEAA and the Negotiated Rate Agreement, plus interest, pursuant to 41 U.S.C. § 7109(a)(1);

4. That the Court order the Federal Defendants to pay the contract support costs due and owing to the Tribe under the Negotiated Rate Agreement, a sum totaling $584,645, plus, pursuant to 41 U.S.C. § 7109(a)(1), interest on the CDA Claim accruing from February 27, 2014, the date the contracting officer received the Tribe's CDA Claim until the date of payment;

5. That the Court award reasonable attorneys' fees, expenses, and costs to the Tribe, pursuant to 5 U.S.C. § 504 and 28 U.S.C. § 2412, on the grounds that the Federal Defendants' position is not substantially justified; and

6. That the Court grant the Tribe such other relief as the Court may deem appropriate.

DATED: June __11__, 2014
Respectfully Submitted,

RAPPORT AND MARSTON

By: */s/ Lester J. Marston*
_____
LESTER J. MARSTON
Attorney for Plaintiff
the Alturas Indian Rancheria

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT